# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IRVING H. BLUMENTHAL, JR., individually and on behalf of all similarly situated insureds of New York Life Insurance and Annuity Corporation,<br><br>　　　　　　Plaintiff,<br><br>-vs-<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION,<br><br>　　　　　　Defendant. | Case No. CIV-08-456-F |

## ORDER

Before the court is the Motion to Dismiss of Defendant New York Life Insurance and Annuity Corporation (doc. no. 14). Also before the court is Plaintiff's Motion to Strike Defendant's Motion to Dismiss (doc. no. 23). Upon review of all of the parties' submissions in support of and in opposition to the motions, the court makes its determination.

<u>Allegations of Plaintiff's Complaint</u>

Plaintiff brings this action individually and on behalf of similarly situated insureds of defendant alleging claims for fraud and misrepresentation, breach of contract, unjust enrichment and rescission. In the complaint, plaintiff alleges that defendant marketed and sold universal life policies to plaintiff and class members. The policies had a stated monthly premium and provided a life insurance benefit. According to plaintiff, "a portion of the monthly premium for each policy is deducted for the cost of the life insurance benefit and the remainder of the monthly premium

is credited to the policy's cash value." Complaint, ¶ 13. The "maturity date for each policy is set for a date certain." *Id.,* ¶ 14. Plaintiff alleges that as an inducement for plaintiff and class members to purchase defendant's policies, defendant and its agents represented that, with the payment of the monthly premiums, the policies would continue to accrue cash value and the life insurance benefits would remain in effect until the policies' maturity date or the death of the insureds. Plaintiff alleges that he and the class members were told by defendant's agents, as well as in the illustrations used during the sale of the policies, that the purchase of new whole life policies would entail making annual premium payments for a fixed number of years (typically between eight and ten years) and then, thereafter, no additional premiums would have to be paid on the policies because the policies would "POP" and thereafter pay for themselves. Plaintiff alleges that these representations were both material and false. According to plaintiff, the payment of the premiums "only during a fixed period of years," *id.* at *¶ 17,* would not be sufficient to carry the cost of the policies for the life of plaintiff and the class members without reducing the life insurance benefit, cash value or surrender values, contrary to the uniform sales presentations and policy illustrations.

In addition, plaintiff alleges that as further inducement for plaintiff and the class members to purchase the policies, defendant misrepresented the number of out-of-pocket premium payments a policyholder would have to pay and the cash value, surrender values and/or benefits (including lifetime income payable if the policies were later converted to annuities) a policyholder would realize based on a particular number of cash premium payments, and/or the nature of the product being sold. Plaintiff alleges that defendant also misrepresented "the benefits from and suitability and impact of, using some or all of an existing policy's cash value to purchase or maintain a policy by means of a surrender or withdrawal/partial surrender of, or loan

2

from, the existing policy." *Id.*, ¶ 19. Plaintiff alleges that he and the class members, as existing and new policyholders, were induced to surrender existing policies and purchase new policies from defendant based upon these misrepresentations and omissions. According to plaintiff, defendant failed to disclose that such replacements were, in most instances, inappropriate and unsuitable purchases that operated to the financial disadvantage of the policy owner. Plaintiff alleges that contrary to the representations of defendant and its agents, the policies' cash values have diminished and continue to diminish and will have no cash value, even though monthly premiums are paid. Also, plaintiff alleges that contrary to the representations of defendant and its agents, the policies will not provide a death benefit, even though all monthly premiums are paid well before the maturity date of each of the policies. Plaintiff alleges that as a result of the misrepresentations and misleading omissions of defendant, plaintiff and the class members have been induced to purchase universal life policies that will be worthless long before their maturity dates, leaving plaintiff and the plaintiff class without life insurance coverage and without recourse to purchase comparable replacement coverage.

In the complaint, plaintiff also alleges specific facts as to the purchase of his policy. According to plaintiff, defendant issued the universal life policy to him, Policy No. 62 776 533, on June 12, 1999. The policy has a stated monthly premium of $4,420.50 and provides a life insurance benefit of $1,000,000.00. The maturity date of the policy is June 12, 2032. Plaintiff alleges that contrary to the representations of defendant and its agents, the policy's cash value is diminishing and that it will have no cash value, even though monthly premiums are paid, beginning in year 13 of the policy at the earliest or year 17 of the policy at the latest. Plaintiff also alleges that contrary to the representations of defendant and its agents, the policy will not have a death benefit, even though all monthly premiums are paid, beginning in

year 13 of the policy at the earliest or year 17 of the policy at the latest. Plaintiff further alleges that he only became aware of the true nature and operation of the policy when, at his request, defendant provided plaintiff a forward-looking illustration, prepared on November 28, 2006, which shows that the policy will have neither cash value nor a life insurance benefit beginning in year 13 of the policy at the earliest or year 17 at the latest, despite the payment of all monthly premiums due under the policy.

Grounds for Defendant's Motion

In its motion, defendant contends that dismissal of the complaint is warranted under Rule 12(b)(6), Fed. R. Civ. P., on several grounds. First, defendant argues that plaintiff's claims are time-barred. Defendant asserts that the alleged oral misrepresentations made by defendant and its agents are contradicted by the policy's plain terms, putting plaintiff on notice of his claims when he received the policy in 1999. Defendant contends that any of the alleged oral misrepresentations could have been discovered during the ten-day free look period of the policy.[1] According to defendant, the latest applicable limitation period for plaintiff's claims expired no later than June 2004. Second, defendant contends that the complaint fails to state a claim for fraud. According to defendant, plaintiff could not reasonably rely on alleged oral misrepresentations by defendant or its agent because those representations directly

---

[1] The policy gives the insured a ten day right to examine the policy. It provides in pertinent part:

> Please examine your policy. Within 10 days after delivery, you can return the policy to the Corporation or to the agent through whom it was purchased, with a written request for a full refund of premium. Upon such a request, the policy will be void from the start, and a full premium refund will be made.

*See*, Exhibit 2 to defendant's motion, p. 1.

contradict the policy's plain terms.  Also, defendant contends that plaintiff could not rely on the alleged oral misrepresentations because they were predictions as to future policy performance rather than statements of existing facts.  Defendant further contends that plaintiff has failed to plead the fraud claim with particularity as required by Rule 9(b), Fed. R. Civ. P.  Third, defendant contends that plaintiff has failed to state a breach of contract claim.  Defendant asserts that the complaint alleges that defendant entered into "oral and written contracts" with plaintiff.  Defendant contends that plaintiff's allegation that defendant entered into an oral contract with plaintiff is contrary to well-settled Oklahoma law.  Defendant contends that the parol evidence rule precludes any evidence of the alleged oral agreement.  Defendant also asserts that the written contract contains an unambiguous integration clause, which expressly supersedes all oral negotiations.  Defendant contends that none of the oral promises plaintiff alleges were made are included in the unambiguous terms of the policy. Fourth, defendant contends that plaintiff's claim for unjust enrichment fails to state a claim because plaintiff cannot show resulting injustice.  Defendant contends that plaintiff received something in exchange for the premiums paid, insurance on his life and access to cash value.  Finally, defendant contends that plaintiff's rescission claim fails because his fraud claim fails and because plaintiff failed to act promptly in seeking rescission.

    In support of its motion, defendant refers to an illustration, prepared on January 17, 1999, which defendant asserts was given to plaintiff during the policy sales process.  According to defendant, plaintiff's complaint refers to the use of illustrations by defendant's agents during the sales process.  Defendant contends that the 1999 illustration presented to plaintiff stated that cash values could increase or decrease depending on the amount and timing of premiums paid, the interest rates credited, the amount of charges deducted and the amount of any withdrawals or policy

loans.  Defendant asserts that the illustration also stated that it was the responsibility of the policyowner to make sure sufficient premiums were paid to keep the policy in force.  In addition, defendant contends that the 1999 illustration showed that the policy would expire in 16 years at a non-guaranteed interest crediting rate of 5.90%. Defendant further states that the 1999 illustration unambiguously stated that the premium outlay was not guaranteed to keep the policy in force.

Plaintiff's Motion to Strike

Plaintiff, in his motion to strike, argues that defendant has impermissibly relied on matters outside the pleadings to support its motion.  Specifically,  plaintiff points to defendant's reliance on the 1999 illustration.  Plaintiff contends that defendant's submission of this extraneous material prevents the court from considering the motion brought pursuant to Rule 12(b)(6).  According to plaintiff, a complaint is deemed to include any document attached to it as an exhibit or any document incorporated in it by reference.  However, plaintiff asserts that if a complaint does not incorporate a document by reference or a document is not attached to the complaint, the court may not consider the document in a Rule 12(b)(6)  motion to dismiss unless the document is referred to in the complaint, is central to the plaintiff's claim and is indisputably authentic.  *See*, GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  Plaintiff asserts that the 1999 illustration was not referred to in the complaint.  Although the complaint refers to the use of illustrations by defendant's agents, plaintiff contends that the complaint did not contain any reference to the 1999 illustration, either by title or description.  Moreover, plaintiff contends that the 1999 illustration is not central to plaintiff's claim.  Plaintiff contends that he is not relying on the illustration to prove any of his claims.  Rather, he argues that defendant is relying upon the document to dispute the allegations of the complaint.  Further, plaintiff contends that the 1999 illustration is not an indisputably authenticated copy

of the illustration prepared for plaintiff's policy. Thus, plaintiff contends that the court may not consider the 1999 illustration in its review of defendant's motion without converting the motion into one for summary judgment under Rule 56, Fed. R. Civ. P. And plaintiff maintains that the motion should not be converted to one for summary judgment because plaintiff has had no opportunity to conduct discovery necessary to respond to the 1999 illustration. Therefore, plaintiff urges the court to strike defendant's motion to dismiss and direct defendant to file an answer or submit a motion to dismiss in compliance with Rule 12(b)(6).

Upon review, the court declines to grant plaintiff's motion to strike. While the court concurs with plaintiff that the 1999 illustration was not referred to in the complaint by title or description, is not central to plaintiff's claim, was not properly authenticated when submitted and cannot be relied upon without converting defendant's motion into one for summary judgment, the court concludes that striking defendant's motion to dismiss is not appropriate. In its motion, defendant does not rely upon the 1999 illustration exclusively. Defendant also relies upon the actual policy at issue to support its motion. Plaintiff does not challenge defendant's reliance upon the policy. Thus, the court concludes that it may proceed to adjudicate defendant's motion under Rule 12(b)(6), so long as it does not consider the 1999 illustration.[2] Because the court will not consider the 1999 illustration, the court need not convert defendant's motion to one for summary judgment under Rule 56. The court therefore turns to the merits of defendant's motion.

---

[2] The practice of supporting Rule 12(b)(6) motions with extraneous materials and then arguing – with the inevitable resultant round of briefing on the collateral issue of what materials may be considered under Rule 12(b)(6) – about whether those materials may be considered is not condoned by the court. To be sure, extraneous materials may, in some instances, appropriately be placed before the court in support of a Rule 12(b)(6) motion. But those exceptions are narrow and should not be relied upon to get the court and the parties bogged down in what amounts to a free bite at the summary judgment apple.

Standard of Review

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1969, 1974 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*.

Rule 9(b) governs the pleading of certain special matters. Rule 9(b) provides in pertinent part: "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." The requirements of Rule 9(b) are to be read in conjunction with the general pleading principles of Rule 8, Fed. R. Civ. P., calling for the pleadings to be "simple, concise, and direct, . . . and to be construed as to do justice." Rule 8(d) and (e), Fed. R. Civ. P.; Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997). As with Rule 8, Rule 9(b)'s purpose is to afford the defendant fair notice of plaintiff's claim and the factual ground upon which it is based. *Id*. In order to plead fraud with particularity, plaintiff's complaint must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Indus., 203 F.3d 1202, 1236 (10th Cir. 2000) (quotations omitted). This means "'the who, what, when, where, and how: the first paragraph of any newspaper story.'"

8

Caprin v. Simon Transportation Services, Inc., 99 Fed. Appx. 150, 2004 WL 326995, *5 (10th Cir. Feb. 23, 2004) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).

Statute of Limitations

  Defendant contends that plaintiff's claims for fraud, breach of contract and unjust enrichment are time barred. According to defendant, as previously stated, plaintiff's policy, dated June 12, 1999, had a ten-day free look provision which granted plaintiff ten days to examine the policy and cancel it, if plaintiff was not satisfied with the policy. Despite plaintiff's allegations that he only became aware of the true nature and operation of the policy when he received the November 28, 2006 forward-looking illustrative report, defendant argues that the alleged oral misrepresentations regarding the policy could have been discovered during plaintiff's ten-day free look period in 1999. Defendant contends that the alleged oral misrepresentations are directly contradicted by the policy's written terms, which defendant contends plaintiff had a duty to read under Oklahoma law. Defendant asserts that the policy does not state that premiums need only be paid for "eight to ten years" as purportedly represented. According to defendant, the policy states that "No Premiums Payable on or After Age 100." See, Exhibit 2 of defendant's motion, p. 1. Defendant also asserts that the policy states that coverage could lapse prior to the maturity date even if premiums are timely paid.[3] Defendant contends that the policy

---

[3] The policy states:

> COVERAGE MAY EXPIRE PRIOR TO THE MATURITY DATE SHOWN, IF PREMIUMS ARE INSUFFICIENT TO CONTINUE COVERAGE TO SUCH DATE OR WHERE A LOAN OR PARTIAL SURRENDER IS MADE. COVERAGE WILL ALSO BE AFFECTED IF CURRENT VALUES CHANGE.
> IT IS POSSIBLE THAT COVERAGE UNDER THIS POLICY MAY NOT CONTINUE TO THE MATURITY DATE EVEN IF

states that the cash value and amount of insurance under the policy are based on the amount and interval of premiums paid[4] and that the policy will continue only as long as the cash surrender value is sufficient to pay the monthly charges.[5] Thus, defendant contends that the policy's terms put plaintiff on notice in 1999 that any alleged misrepresentations made by defendant's agents were not true. Defendant therefore contends that plaintiff filed suit nearly fours years after the longest potentially applicable limitations period (five years) expired.

---

        SCHEDULED PREMIUMS ARE PAID IN A TIMELY MANNER.

*See*, Exhibit 2 to defendant's motion, p. 2 (Cont.) (emphasis in original).

It also provides in section 1.5 of the policy:

> It is possible that coverage under this policy may not continue to the Maturity Date even if scheduled premiums are paid in a timely manner.

*See*, Exhibit 2 to defendant's motion, p. 4, § 1.5.

[4] The policy provides in pertinent part:

> The cash value and amount of insurance under this policy are based on the amount and interval of the premiums that have been paid.

*See*, Exhibit 2 to defendant's motion, p. 7, § 4.1.

[5] The policy provides in pertinent part:

> A planned premium does not have to be paid to keep this policy in force if the cash surrender value is enough to cover the charges made on the Monthly Deduction Day.
>
>                 \* \* \* \*
>
> When premium payments are not made as planned, this policy will continue in effect as long as the cash surrender value is sufficient to pay Monthly Deduction Charges.

*See*, Exhibit 2 to defendant's motion, p. 7, § 4.2, p. 8, § 4.4.

Plaintiff, in response, argues that the policy terms do not disclose the true operation of the policy. Although the policy contains provisions which state that coverage may expire prior to the maturity date if premiums are insufficient to continue coverage and that it was possible that coverage may not continue to the maturity date even if scheduled premiums are paid timely, plaintiff asserts that these provisions do not disclose why premiums would be insufficient or why coverage would not continue even if scheduled premiums are paid timely. Plaintiff also contends that the policy does not state that the cash value would decline and that the cash value would be depleted by year 17 of the policy. Plaintiff contends that it is premature at this stage of the litigation to make a factual determination as to whether the policy put plaintiff on notice of his claims. He maintains that the policy does not directly contradict defendant's agent's misrepresentations and put plaintiff on notice that the alleged oral representations were not true. In addition, according to plaintiff, his claims are timely because he did not discover the true facts regarding the operation of his policy, which defendant and its agent failed to disclose, until November 28, 2006. Plaintiff contends that the issue of when the fraud was reasonably discoverable and whether plaintiff used due diligence to discover the fraud are questions for the jury.

In reply, defendants contend that policy phrases such as "coverage may expire prior to the maturity date even if premiums are paid in a timely manner" and "it is possible that coverage under this policy may not continue to the maturity date" directly contradict the alleged oral misrepresentations that the policy would be paid up after a fixed number of years and that the policy would continue to accrue cash value until the maturity date. Defendant also asserts that while the policy does not state that the coverage would terminate by year 17, the policy clearly states that coverage could terminate prior to death or maturity date.

The Oklahoma discovery rule allows the limitation period in certain tort cases to be tolled until the fraud is discovered or until the date the defrauded party, by the exercise of ordinary diligence, might have recognized the deception. Smith v. Baptist Foundation of Oklahoma, 50 P.3d 1132, 1138 (Okla. 2002). The question of when fraud is discovered or should have been unearthed with the exercise of ordinary diligence is one of fact dependent on the surrounding circumstances, the relationship of the parties, and all other elements peculiar to the cause. *Id.* Nonetheless, if the means of discovering the fraud are in the hands of the party defrauded and the party defrauding has not covered up the fraud to the extent it would be difficult or impossible to discover, the party defrauded will be deemed to have had notice of the fraud from the date means of discovering the fraud came into his hands and the fraud will be deemed to have been discovered upon that date. Matter of Woodward, 549 P.2d 1207, 1209 (Okla. 1976).

The court is not convinced that the alleged misrepresentations at issue in this case are squarely contradicted by the written policy, as argued by defendant. Although the policy states that "No Premiums Payable on or After Age 100," this language on its face has no reasonably apparent nexus with the operation of the premium payment scheme alleged by plaintiff.[6] The policy indicates that premiums are payable until age 100 but it does not indicate from what source premium funding would be derived. According to plaintiff, the premiums were to be paid from accumulated cash value and not from plaintiff's pocket. The policy is not inconsistent with the agent's representation that the policy would be paid up within eight to ten years since the remaining payments were to come from accumulated cash value.

---

[6] A fair reading of the complaint as a whole suggests (taking plaintiff's allegations as true) that a conventionally-drafted universal life policy was the centerpiece of a marketing scheme that was not contemplated in the drafting of the policy, and perhaps not contemplated in the actuarial design of the policy series.

12

Although the policy does say that coverage may expire prior to maturity date if premiums are insufficient or that the policy will continue in effect as long as the cash surrender value is sufficient to pay monthly charges, there is nothing in the policy which discloses that the accumulated cash value would not be sufficient to continue the coverage.  As stated by defendant, the policy does state that it is possible that coverage under the policy may not continue to maturity date even if scheduled premiums are paid in a timely manner. However, the policy does not disclose why the scheduled premium payments would not be sufficient to continue coverage.  Further, taking the allegations of plaintiff as true, the policy does not reveal its true nature and operation.  According to plaintiff, the policy will have no cash value, even though monthly premiums are paid, beginning in year thirteen at the earliest or year seventeen of the policy at the latest.  Plaintiff alleges that defendant failed to disclose the true nature and operation of the policy.  Upon review, the court cannot conclude, as a matter of law, that an examination of the written policy during the ten-day review period would have put plaintiff on notice of his claims as alleged in the complaint.

In its papers, defendant relies heavily upon <u>Slover v. Equitable Variable Life Ins. Co.</u>, 443 F. Supp. 2d 1272 (N.D. Okla. 2006), wherein the court found that the limitations period was not tolled by the discovery rule because the alleged misrepresentations at issue were contradicted by the written terms of the life insurance policy and were discoverable by the defrauded party during the ten-day review period. The court, however, finds <u>Slover</u> to be distinguishable. The policy provisions at issue in <u>Slover</u> are different from those presented in this case.  The court in <u>Slover</u> found obvious differences between the alleged sales pitch and the actual terms of the policy.  *Id*. at 1275.  The court cannot agree that the policy provisions at issue in this case clearly contradict the alleged misrepresentations complained of by plaintiff. Moreover, unlike the plaintiff in <u>Slover,</u> plaintiff in the case at bar claims that

13

defendant and its agent failed to disclose the true nature and operation of plaintiff's policy, that is, that the policy would have no cash value in year thirteen at the earliest or year seventeen at the latest. The court, taking plaintiff's well-pleaded factual allegations as true, cannot conclude that plaintiff's fraud claim is time-barred.

Although defendant contends that the other claims (breach of contract and unjust enrichment) are time-barred, defendant has not provided developed argument and authority in its motion to show that these claims are barred by the applicable statute of limitations. The court declines to engage in the analysis *sua sponte*. Defendant may reurge its statute of limitations argument in regard to these claims at the summary judgment stage, if appropriate.

Fraud Claim

Defendant contends that the fraud claim should be dismissed because plaintiff could not reasonably rely upon the alleged misrepresentations by defendant and its agent, because the written policy directly contradicts the alleged misrepresentations. However, as the court has previously concluded, the court cannot say as a matter of law that the alleged misrepresentations are clearly contradicted by the policy provisions. Moreover, the alleged omissions are not clearly contradicted by the policy. Because the court cannot say that the policy provisions plainly contradict the misrepresentations and omissions, the court cannot say that plaintiff could not have reasonably relied upon the alleged misrepresentations and omissions in light of the policy provisions. The court further notes that although defendant invokes the parol evidence rule, that rule does not preclude evidence of false and fraudulent representations of fact offered to establish fraud in the inducement of the execution of a contract. Bredouw v. Jones, 431 P.2d 413, 419 (Okla. 1966).

In addition, defendant contends that plaintiff could not reasonably rely on the alleged misrepresentations because the alleged misrepresentations were in the nature

of opinions and predictions of future events rather than of existing facts.  Defendant is correct that for false representations to form the basis of a fraud claim, the representations must relate to existing facts or those which previously existed, and not to promises as to future events.  Hall v. Edge, 782 P.2d 122, 128 n. 4 (Okla. 1989).  An exception to this general rule, however, exists if the false representations "were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge," *id*. (quotation omitted), which might be especially apt to happen in situations in which the financial arrangement described by the agent to promote the sale of the universal life contract involved a payment scheme not clearly contemplated by the language of the policy.  The court concludes that allegations in the complaint, taken as true, raise a reasonable inference that alleged misrepresentations made were intended and accepted as representations of fact and involved a matter peculiarly within defendant or its agent's knowledge.  The court cannot say as a matter of law that it was not reasonable for plaintiff to have placed reliance on the alleged misrepresentations.  The court therefore concludes that dismissal is not appropriate on the basis that the alleged misrepresentations were in the nature of opinions and predictions of future events.

Defendant further contends that plaintiff's complaint should be dismissed because plaintiff has not pled fraud with particularity as required by Rule 9(b).  As previously stated, the purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based.  Schwartz, 124 F.3d at 1252.  Having reviewed the complaint and defendant's papers challenging the complaint, the court concludes that defendant has been provided fair notice of plaintiff's claims and the factual ground upon which they are based.  The details of plaintiff's claims may be readily ascertained through the discovery process.

Contract Claim

Defendant contends that plaintiff's breach of contract claim must be dismissed because plaintiff's allegation that defendant entered into an oral contract is contrary to Oklahoma law. Defendant specifically invokes the parol evidence rule. Under the parol evidence rule, pre-contract negotiations and oral discussions are merged into and superseded by the terms of the executed writing. *See*, 15 O.S. 2001 § 137, First Nat. Bank in Durant v. Honey Creek Entertainment Corp., 54 P.3d 100, 103 (Okla. 2002). Parol evidence cannot be used to vary, modify or contradict the terms of an executed written agreement. *Id*. Defendant contends that the alleged oral promise is not part of the universal life policy and plaintiff cannot rely upon it for his breach of contract claim.

In addition, defendant contends that plaintiff's allegations of breach of the written contract ring hollow. According to defendant, the policy does not state that the premiums will end after a fixed number of years. It also makes no guarantee that the policy will last until maturity or the policyowner's death. Defendant further contends that the policy does not guarantee cash value, surrender values, death benefits and lifetime income payable but instead unambiguously states that the cash value and the amount of insurance under the policy are based on the amount and interval of premiums that have been paid and if premiums are insufficient, the policy could lapse.

Plaintiff, in response, contends that his breach of contract claim cannot be dismissed based upon the parol evidence rule. In support of his position, plaintiff simply incorporates his argument addressing the parol evidence rule in relation to his fraud claim.

Although the court concludes that plaintiff has not adequately responded to defendant's arguments in regard to the breach of contract claim, the court declines to

dismiss the breach of contract claim. The court has previously concluded that defendant and its agent's alleged oral misrepresentation to plaintiff that he would only be required to make payments for a fixed number of years is not squarely contradicted by the language of the policy. While the policy calls for the payment of premiums, plaintiff contends that defendant's agent represented that the cash value of the policy would accumulate to the point that the policy would be paid up and the accumulated cash value would pay for the premiums. The policy at issue does not indicate the source of the premium payments. In Parkhill v. Minnesota Mutual Life Ins. Co., 995 F. Supp. 983, 990 (D. Minn. 1998), the court applying Minnesota and Florida law found that an insurance policy was ambiguous as to the source of premium payments and found that parol evidence was admissible to explain the parties' intent. This court, like the court in Parkhill, finds the policy at issue in this case is ambiguous as to the source of premium payments. The court therefore concludes that parol evidence is admissible to explain the ambiguity. Briggs v. Waggoner, 375 P.2d 896, 900 (Okla. 1962). At this stage of the proceedings, and taking plaintiff's allegations as true, the court finds that dismissal of the breach of contract claim is not appropriate.

Unjust Enrichment Claim

Defendant challenges plaintiff's unjust enrichment claim on the basis that any alleged enrichment received by plaintiff did not result in an injustice to plaintiff. Defendant contends that in order to recover for unjust enrichment under Oklahoma law, a plaintiff must show enrichment to defendant coupled with a resulting injustice to plaintiff. According to defendant, any alleged enrichment received by defendant did not result in an injustice to plaintiff because plaintiff received something for the premiums paid, life insurance benefits and access to cash value. Therefore, defendant contends that plaintiff's unjust enrichment claims must be dismissed.

17

Plaintiff argues that he has sufficiently pled a claim of unjust enrichment. Plaintiff asserts that, taking his allegations as true, defendant has been unjustly enriched by plaintiff's excessive payments for a policy which will soon be worthless.

Viewing the factual allegations as true, the court concludes that plaintiff's claim survives dismissal. The court concludes that the complaint contains enough facts to state a claim of unjust enrichment that is plausible on its face. Although Oklahoma law provides that courts are not to invoke their equitable jurisdiction when an adequate legal remedy is available, <u>Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.</u>, 408 F.3d 1300, 1309 (Okla. 2005), the court, at this stage of the proceedings, will permit plaintiff to plead in the alterative and proceed with his unjust enrichment claim.

<u>Rescission Claim</u>

Finally, defendant asserts that plaintiff's rescission claim should be dismissed on two grounds. First, defendant contends that the rescission claim fails because the fraud claim fails. Second, defendant asserts that the rescission claim fails because plaintiff did not act promptly in seeking rescission. According to defendant, plaintiff waited one and one-half years before bringing the complaint, during which time he continued to receive his benefits and peace of mind.

Addressing defendant's latter argument, plaintiff agrees that Oklahoma law, specifically, 15 O.S. 2001 § 235, requires a party seeking rescission to "rescind promptly." Plaintiff, however, contends that section 235 does not set forth a specific date by which a party must rescind a contract upon the discovery of fraud. Plaintiff contends that whether he rescinded the contract promptly is a question for the jury to decide.

The court, upon review, declines to dismiss this rescission claim based upon the ground of timeliness. Defendant may re-urge this issue on a motion for summary

judgment after the parties have had the opportunity to conduct discovery and the court has all the facts relevant to the claim before it.[7]  The court, however, is cognizant of the Tenth Circuit's statement in Federal Deposit Ins. Corp. v. Palmero, 815 F.2d 1329, 1339 (10th Cir. 1987), that "[t]he prompt action requirement is to be strictly enforced." The court also is cognizant of the Oklahoma cases cited by the Tenth Circuit wherein a five-month delay and a sixteen-month delay were sufficient to bar a rescission claim. *See*, Harmon v. Phillips Petroleum Co., 167 P.2d 360, 364-65 (Okla. 1946) (five-month delay); Creach v. Home Owners' Loan Corp., 131 P.2d 108, 110 (Okla. 1942) (sixteen-month delay).

In light of the court's findings that the fraud claim is not time barred and plaintiff has stated a claim upon which relief may be granted, the court rejects defendant's second ground for dismissing the rescission claim.

Conclusion

Based upon the foregoing, Plaintiff's Motion to Strike Defendant's Motion to Dismiss (doc. no. 23) is **DENIED**.  The Motion to Dismiss of Defendant New York Life Insurance and Annuity Corporation (doc. no. 14) is also **DENIED**.

DATED February 26, 2009.

*/s/ Stephen P. Friot*
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-0456p009(pub).wpd

---

[7] For that matter, the court notes that many of the issues addressed in this order may be more appropriately addressed with the benefit of the record that will be before the court at the summary judgment stage.